## DEBORAH A. AMODIO *v.* VINCENT N. AMODIO
### (SC 15856)

Berdon, Norcott, Katz, McDonald and Peters, Js.

Argued October 28, 1998—officially released February 16, 1999

*Donald L. Altschuler*, with whom, on the brief, was *Richard Altschuler*, for the appellant (defendant).

*Richard L. Goldblatt*, with whom was *Michael C. Boardman*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether the Appellate Court properly concluded that the trial court lacked subject matter jurisdiction to modify a

child support award.[1] The trial court granted the motion by the defendant, Vincent N. Amodio, to modify the child support order, and on the appeal by the plaintiff, Deborah A. Amodio, the Appellate Court reversed the granting of the motion to modify on the ground that the trial court had lacked subject matter jurisdiction to modify the order. We reverse the judgment of the Appellate Court.

The Appellate Court opinion aptly sets forth the following facts and procedural history relevant to this appeal. "On July 31, 1990, the parties stipulated, pursuant to General Statutes § 46b-51, that their marriage had broken down irretrievably and requested a dissolution. The parties submitted a lengthy and comprehensive written separation agreement that covered, inter alia, alimony, child support and division of assets. On July 31, 1990, the marriage was dissolved and the agreement, which awarded the plaintiff $325 per week in child support for their two minor children, was approved by the trial judge as an order of the court.[2] The agreement specifically provided that '[t]here shall be no alimony award to either party.'

"On April 7, 1995, the defendant sought a modification of the support order. He alleged that the order did not conform to the 1994 child support guidelines and, therefore, should be modified. In addition, the defendant alleged that the order did not conform to the child support guidelines in effect at the time of the original order. After reviewing financial affidavits and hearing

---

[1] The specific certified question in this appeal is: "Did the Appellate Court properly conclude that the trial court had no subject matter jurisdiction to modify the child support award?" *Amodio v. Amodio*, 243 Conn. 963, 707 A.2d 1265 (1998).

[2] "The judgment provided: 'It is adjudged and decreed that the parties comply with the provisions of an Agreement between them dated July 26, 1990, which is found by the Court to be fair and equitable under all circumstances and is approved and incorporated herein by reference.' " *Amodio v. Amodio*, 45 Conn. App. 737, 739 n.1, 697 A.2d 373 (1997).

testimony, the trial court granted the defendant's motion and ordered a downward modification of the support order to conform to the guidelines now in effect. The modified support order required the defendant to pay $220 per week. The trial court based the modification on the original dissolution court's substantial deviation from the guidelines and its failure to make a specific finding on the record that the application of the guidelines would be inequitable or inappropriate pursuant to General Statutes § 46b-215b (a). The plaintiff appeals from the granting of the motion to modify." *Amodio* v. *Amodio*, 45 Conn. App. 737, 738–39, 697 A.2d 373 (1997).

The Appellate Court determined, sua sponte, that the trial court did not have jurisdiction to modify the defendant's support obligation. Id., 739. The Appellate Court concluded that the parties' dissolution decree unambiguously foreclosed modification of the support order unless the defendant earned more than $900 per week, and the defendant's financial affidavit indicated that his income had remained at that level. Id., 742. Thereafter, the present appeal ensued. We conclude that the issue regarding subject matter jurisdiction was resolved incorrectly by the Appellate Court and, therefore, we reverse the decision of that court and remand the matter for further proceedings.[3]

Answering this certified question requires us to review the distinction between a trial court's "jurisdiction" and its "authority to act" under a particular statute. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second),

---

[3] Because we have resolved the jurisdictional question as we have in this appeal, we need not reach the plaintiff's alternate ground for affirmance, which asked this court to determine whether the trial court improperly applied *McHugh* v. *McHugh*, 27 Conn. App. 724, 609 A.2d 250 (1992), retroactively. On remand, the Appellate Court will be required to resolve this issue.

Judgments § 11. 'A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it.' *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." *Craig* v. *Bronson*, 202 Conn. 93, 101, 520 A.2d 155 (1987). It is well established that, in determining whether a court has subject matter jurisdiction, "every presumption favoring jurisdiction should be indulged." *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 420–21 n.3, 426 A.2d 1324 (1980).

Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. "The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." *Bailey* v. *Mars*, 138 Conn. 593, 601, 87 A.2d 388 (1952). More than one century ago in *Terry's Appeal from Probate*, 67 Conn. 181, 34 A. 1032 (1896), in reviewing a probate court's appointment of a will administrator, this court distinguished between jurisdiction and the proper exercise of the authority to act. This court concluded that "the Court of Probate had jurisdiction of those questions [concerning appointment], that is, had the power to hear, and to determine them one way or the other; but we do not say that it had the power, under all circumstances, to decide these questions as it saw fit; for in exercising its jurisdiction it must obey the law, or its determination will be at least erroneous. . . . [T]he statute made it the duty of the court to appoint such an administrator under certain circumstances, and this gave it the right to determine whether or not those

circumstances existed; but in the exercise of that jurisdiction—in its determination of the question—it erred because it decided contrary to law." (Citation omitted.) Id., 185. Since *Terry's Appeal from Probate*, we have maintained the distinction between these concepts. See, e.g., *Artman* v. *Artman*, 111 Conn. 124, 130, 149 A. 246 (1930) ("[i]f it applied any wrong rule of law to the situation, it was not acting without jurisdiction but in the erroneous exercise of its jurisdiction"); see also *Misinonile* v. *Misinonile*, 190 Conn. 132, 136, 459 A.2d 518 (1983); *Broaca* v. *Broaca*, 181 Conn. 463, 473, 435 A.2d 1016 (1980) (*Peters, J.*, dissenting); *Bailey* v. *Mars*, supra, 601; *Thomas Bennett Estate, Inc.* v. *New Haven*, 117 Conn. 25, 38, 166 A. 680 (1933).

With these principles in mind, we examine the source of the court's jurisdiction to modify child support orders, and its authority to act pursuant to the relevant statute. General Statutes § 46b-1 (c)[4] provides the Superior Court with plenary and general subject matter jurisdiction over legal disputes in "family relations matters," including alimony and support. General Statutes § 46b-86 (a)[5] provides the trial court with continuing jurisdiction to modify support orders. Together, therefore,

[4] General Statutes § 46b-1 provides in relevant part: "Family relations matters defined. Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving: (1) Dissolution of marriage, contested and uncontested, except dissolution upon conviction of crime as provided in section 46b-47; (2) legal separation; (3) annulment of marriage; (4) alimony, support, custody and change of name incident to dissolution of marriage, legal separation and annulment; (5) actions brought under section 46b-15 . . . and (17) all such other matters within the jurisdiction of the Superior Court concerning children or family relations as may be determined by the judges of said court."

[5] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines

these two statutes provided the trial court with subject matter jurisdiction over the modification claim in the present case.

Separate and distinct from the question of whether a court has jurisdictional power to hear and determine a support matter, however, is the question of whether a trial court *properly* applies § 46b-86 (a), that is, properly exercises its statutory authority to act. Section 46b-86 (a) authorizes the court to modify support orders, "[u]nless and to the extent that the decree precludes modification . . . ." Even if preclusive language exists, however, because of inequities between the parties that may be inherent in the bargaining process of support agreements, and because of the volatile nature of respective personal circumstances, it has been recognized judicially that "[p]rovisions which preclude modification of alimony [or support] tend to be disfavored." *Eldridge* v. *Eldridge*, 4 Conn. App. 489, 493, 495 A.2d 283 (1985); see also *Cummock* v. *Cummock*, 180 Conn. 218, 222–23, 429 A.2d 474 (1980). For example, support orders can be modified in spite of preclusion provisions when those provisions are ambiguous; *McGuinness* v. *McGuinness*, 185 Conn. 7, 9, 440 A.2d 804 (1981); and when the rights of interested parties are not protected adequately by the separation agreement. *Guille* v. *Guille*, 196 Conn. 260, 267, 492 A.2d 175 (1985).

In the present case, the Appellate Court relied on its decision in *Eldridge* to conclude that (1) the support decree was clear and unambiguous, (2) the terms were therefore unmodifiable, and (3) as a result, the trial court was without jurisdiction in this matter. *Amodio* v. *Amodio*, supra, 45 Conn. App. 742; see *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 493–94 ("[w]here a provision which precludes or restricts a later court's power

established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

to modify financial orders is clear and unambiguous, however, it will be upheld").

In concluding that the trial court had no *jurisdiction* to modify because the order contained a preclusion provision, the Appellate Court confused the issues of subject matter jurisdiction and the proper exercise of the trial court's authority to act pursuant to § 46b-86 (a). The common thread to all of the aforementioned cases addressing the trial court's power to modify support orders pursuant to § 46b-86 (a) is that in every case the relevant courts actively were adjudicating claims for modification by determining whether § 46b-86 (a) precluded modification in that instance. See, e.g., *Guille* v. *Guille*, supra, 196 Conn. 268; *Misinonile* v. *Misinonile*, supra, 190 Conn. 136; *McGuinness* v. *McGuinness*, supra, 185 Conn. 9; *Cummock* v. *Cummock*, supra, 180 Conn. 222–23; *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 493–94. As we have stated, the trial court unquestionably has the power to hear and determine any modification issue. With subject matter jurisdiction established, the trial court's task is to apply the statute to the facts of a particular case; indeed, interpreting statutes and applying the law to the facts before it is the traditional province of the trial court. *Peck* v. *Jacquemin*, 196 Conn. 53, 73, 491 A.2d 1043 (1985) ("[i]n a trial to the court, the trial judge performs a dual function; he is the authority who must adopt the correct principles of law to apply to the facts which he finds in leading to the judgment rendered"). Upon review of the trial court's actions, therefore, the Appellate Court's role is to review the trial court's exercise of its authority to act. See *Rostain* v. *Rostain*, 214 Conn. 713, 716, 573 A.2d 710 (1990) ("[t]he scope of our review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have

concluded as it did" [internal quotation marks omitted]). In the present case, such review means to determine whether the trial court, in granting the motion to modify, properly exercised its authority in accordance with § 46b-86 (a).

Our resolution of the certified question does not mean necessarily that the trial court correctly interpreted or applied the statute in this case; nor does it mean that modification was warranted. We conclude that the trial court had the jurisdiction to entertain the claim for modification; the propriety of the exercise of its authority over the matter remains for consideration on another day.

The judgment of the Appellate Court is reversed and the case is remanded to that court for a determination of whether the trial court properly exercised its authority in granting the motion to modify.

In this opinion the other justices concurred.