CAROLINE HIRSCHFELD *v.* ROBERT
B. MACHINIST
(AC 31500)
(AC 31562)

Bishop, Bear and Pellegrino, Js.

---

Argued June 2—officially released September 13, 2011

*Joseph T. O'Connor*, for the appellant in AC 31500 and the cross appellant and appellee in AC 31562 (plaintiff).

*Kenneth J. Bartschi* and *Dana M. Hrelic*, with whom, on the brief, were *Arnold Rutkin* and *Melissa Needle*, for the appellee in AC 31500 (defendant).

*Kenneth J. Bartschi* and *Dana M. Hrelic*, with whom, on the brief, was *Arnold Rutkin*, for the appellant and cross appellee in AC 31562 (defendant).

*Opinion*

BISHOP, J. These two appeals arise out of various postjudgment proceedings stemming from the parties' dissolution of marriage.[1] In AC 31500, the plaintiff, Caroline Hirschfeld, claims that the trial court improperly (1) concluded that swimming pool expenses were "shelter expenses" in accordance with the parties' separation agreement, (2) entered a postjudgment order dividing assets when it attributed to her expenses associated with a certain automobile, (3) denied her motion for an order regarding the division of assets without affording her a full evidentiary hearing and (4) denied her request for counsel fees without allowing her to

---

[1] On March 9, 2011, this court dismissed the portions of the plaintiff's appeal in AC 31500 challenging the trial court's orders to sell the parties' real property.

inquire as to the defendant's financial circumstances.[2] In AC 31562, the defendant, Robert Machinist, claims that the trial court abused its discretion in reversing its previous order imposing a sanction on the plaintiff through which she had been precluded from testifying as to housekeeping expenses incurred since the marriage was dissolved. We affirm in part and reverse in part the judgment in AC 31500, and we affirm the judgment in AC 31562.

The marriage of the parties was dissolved on February 2, 2007. The parties had entered into a separation agreement, the terms of which were incorporated as part of the dissolution judgment. Since the date of the judgment, litigation between the parties has been incessant, with more than one hundred court filings. Because the claims on appeal have differing factual and procedural bases, we address each in turn.

## I

### AC 31500

### A

The plaintiff first claims that the court improperly held her liable for expenses associated with the swimming pool at the marital property on the basis of its conclusion that those costs were "shelter expenses" within the meaning of the parties' separation agreement. We disagree.

"It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is to be regarded and construed as a contract.

---

[2] The plaintiff also appeals in AC 31500 and in her cross appeal in AC 31562 from the court's order granting the defendant's request for counsel fees. Because the court did not establish a specific amount to be paid by the plaintiff, there is no final judgment from which the plaintiff properly may appeal. See *Sullivan* v. *Brown*, 116 Conn. App. 660, 662–63, 975 A.2d 1289, cert. denied, 294 Conn. 914, 983 A.2d 852 (2009). Accordingly, this court does not have jurisdiction to address this issue.

. . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . .

"Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . In contrast, an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation." (Citations omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 354–55, 999 A.2d 713 (2010).

Here, the parties agreed that the plaintiff would reside in the marital home in Greenwich until it was sold. Paragraph 6.5 of the separation agreement provides: "Until the earlier of the closing of title to any of the real estate to be sold, or the arrival of June 30, 2007, the [defendant] shall pay all 'shelter expenses' of ownership for each property as shown on his December 5, 2006 financial affidavit. Such expenses of ownership shall include the shelter expenses shown on the [defendant's] financial affidavit of December 5, 2006." Paragraph 6.6 provides that if the house had not been sold by June 30, 2007, the parties thereafter would share the shelter expenses equally until it was sold. Because the home had not been sold as of June 30, 2007, the parties began

sharing the shelter expenses as of July 1, 2007. The defendant filed a motion seeking reimbursement of one half of the expenses associated with the pool and the plaintiff objected, claiming that those expenses did not constitute "shelter expenses" as contemplated by the separation agreement. In response, the court determined that the expenses associated with the swimming pool did constitute shelter expenses and, therefore, ordered the plaintiff to reimburse the defendant one half of those expenses incurred since July 1, 2007.

The term "shelter expenses" is not defined in the separation agreement; nor does it have a precise meaning independent of the parties' separation agreement. The plaintiff argues that the expenses associated with the swimming pool are not shelter expenses because they were not listed on the defendant's December 5, 2006 financial affidavit.[3] The court, however, did not take such a narrow view of the language employed in the parties' separation agreement, finding, instead, that the use of the words "shall include" was not intended to be an expression of limitation, but rather of illustration. On October 15, 2007, the court defined "shelter expenses" as expenses of ownership and concluded that expenses for housekeeping at the home constituted such an expense. Although the pool expenses may not have been listed on the defendant's December 5, 2006 financial affidavit, we agree with the trial court that the phrase "shall include" in paragraph 6.5 of the separation agreement is not exclusive and that pool expenses associated with the home properly may be considered shelter expenses. Accordingly, we conclude that the court properly ordered the plaintiff to reimburse the defendant for her share of those expenses in accordance with the separation agreement.

[3] On that affidavit, expenses associated with the marital home included taxes, insurance, a security system, cable, telephone and Internet, landscaping, water, gas and electric, housekeeping and repairs and services.

## B

The plaintiff next challenges the court's judgment with respect to its order requiring her to reimburse the defendant for the expenses of a loan relating to a Chevrolet Suburban (Suburban). The plaintiff claims that the court's order allocating that expense to her constituted an impermissible postjudgment distribution of assets. We agree.

"[C]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. That section provides in relevant part: At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . . General Statutes § 46b-81 (a). Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage." (Citation omitted; internal quotation marks omitted.) *Rathblott* v. *Rathblott,* 79 Conn. App. 812, 819, 832 A.2d 90 (2003).

Here, the parties' separation agreement provided that each party was responsible for the debts in his or her own name. At the time of dissolution, the loan for the Suburban was only in the defendant's name, and, therefore, was made the defendant's responsibility by the terms of the judgment. Following the judgment, the defendant paid off the loan, transferred the vehicle to the plaintiff and then sought reimbursement for the amount of the loan from the plaintiff. On October 13, 2009, the court concluded that all of the bills associated with the Suburban should be the responsibility of the plaintiff, a ruling we find to be at variance with its order in the dissolution judgment that each party be

responsible for the liabilities listed in his or her name. In shifting the responsibility for that liability from the defendant to the plaintiff, the court, in effect, modified the property division rendered at the time of the dissolution judgment. Because the court did not have the authority to make such a property distribution after the date of the dissolution judgment, the court's judgment ordering the plaintiff to reimburse the defendant must be reversed.

C

The plaintiff also claims that the court improperly denied her motion for an order regarding the division of assets without affording her a full hearing. We agree.

The plaintiff filed a motion for an order requesting a division of assets, specifically, various stock options, passive investments and interests in certain limited partnerships, that the defendant was required to transfer to the plaintiff pursuant to their separation agreement. On August 4, 2009, there was a hearing on the plaintiff's motion during which she was permitted to examine the defendant at length regarding the various assets that were at issue. Throughout the course of that hearing, however, it became apparent that the plaintiff did not have the requisite information to support her motion, and that the proceedings were evolving into a quest for discovery. Consequently, the court told the plaintiff that it was marking her motion off so that she could get more information, potentially including expert testimony, to substantiate her claims regarding these assets.[4] In light of the court's representation that her motion simply was being marked off for that day, the plaintiff did not object. Thereafter, however, on August 24, 2009, without further proceedings or notice

---

[4] Specifically, the court stated: "The motion is going off today. The rest of this motion is going off today. We need to get our act together with regard to the exchange of information."

to the parties, the court denied the plaintiff's motion for an order regarding the division of these assets.[5]

"A party has the right to present evidence within the acceptable rules supporting its theory of the case." *Morgera* v. *Chiappardi*, 74 Conn. App. 442, 455, 813 A.2d 89 (2003). "Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (Internal quotation marks omitted.) Id., 455–56.

We believe that, under the circumstances of this case, the plaintiff improperly was not afforded a full evidentiary hearing on her motion. Although the plaintiff was permitted to present some evidence, she was denied the opportunity to fully pursue her claim by the court's determination to end the hearing with an indication of its intent to mark off her motion for a division of assets. And although the apparent rationale for the court's decision to mark her motion off, as gleaned from our reading of the transcript of the hearing, was that the plaintiff had not properly pursued the requisite discovery and that further discovery was necessary, the court indicated that she would be permitted to continue her presentation of evidence at a future date. Because the court made such a representation to her and the proceedings regarding the plaintiff's motion were terminated, the court incorrectly later denied the plaintiff's motion without giving her the opportunity reasonably to complete the evidentiary hearing. Accordingly, the court's judgment denying the plaintiff's motion for an order

---

[5] The plaintiff also filed a motion for contempt claiming that the defendant had failed to comply with discovery requests for information regarding those assets. The court denied the plaintiff's motion for contempt, finding that the defendant had substantially complied with the plaintiff's requests. The court also found that "for the most part, the assets in question are either without substantial value or cannot be transferred by the [defendant]." Neither of those findings has been challenged on appeal.

regarding the division of assets must be reversed and the case must be remanded for a full evidentiary hearing on that motion.[6]

D

The plaintiff finally claims that the court improperly denied her request for counsel fees. Specifically, she claims that, in denying her request for legal fees, the court improperly refused to require the defendant to file a financial affidavit or permit inquiry into his assets. We are not persuaded.

General Statutes § 46b-62[7] vests in the trial court the discretion to award attorney's fees. "The criteria to be considered in determining whether an award of attorney's fees is appropriate [are set forth in General Statutes § 46b-82 and] include the age, health, station, occupation, amount and sources of income, vocational skills, employability [and] estate and needs of each of the parties . . . . We review the court's awarding of attorney's fees under the abuse of discretion standard. . . . The ultimate issue in our review, therefore, is whether the court reasonably could have concluded as it did. . . . Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . .

_____

[6] In reaching this conclusion, we are not without appreciation that the objective of the trial court was to resolve as many of the parties' multitudinous issues as was reasonably possible and that, in marking the matter off, it was clear to the court that the plaintiff was, in fact, unprepared to proceed on her motion to a conclusion on the assigned day.

[7] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-212 to 46b-213v, inclusive, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to th[is] rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine [the court's] prior financial orders . . . ." (Citation omitted; internal quotation marks omitted.) *Adamo* v. *Adamo*, 123 Conn. App. 38, 53, 1 A.3d 221, cert. denied, 298 Conn. 916, 4 A.3d 830 (2010).

The plaintiff sought counsel fees in connection with all postjudgment motions in the amount of $44,841.52. In support of that request, the plaintiff sought to have the defendant file a financial affidavit and she sought to inquire about an inheritance that the defendant received subsequent to the date of the dissolution judgment. The court did not permit that inquiry. The court found that each party had sufficient liquid assets and, accordingly, made them responsible for their respective counsel fees. On the basis of this finding, which the plaintiff does not challenge on appeal, and which is supported by the plaintiff's March 11, 2009 financial affidavit showing more than $6.8 million in assets, we cannot conclude that the court abused its discretion in denying her request for counsel fees.

II

AC 31562

The defendant appeals from the judgment of the court reversing its prior order in which it sanctioned the plaintiff and precluded her from testifying as to housekeeping expenses for which she was seeking reimbursement from the defendant.

The plaintiff filed a motion for contempt against the defendant based on his failure to pay housekeeping

expenses associated with the marital home. The defendant objected and moved to preclude the plaintiff from presenting any evidence as to those expenses because she had failed to comply with discovery requests pertaining to the motion. The plaintiff claimed that her failure to comply with the discovery requests was based on the fact that the requests were for checks or other documentary proof of payment of the housekeeping expenses, for which none existed. The plaintiff represented that none existed because she paid for those services in cash. Initially, the court granted the motion to preclude the plaintiff's testimony. Upon further reflection, however, the court vacated its order preventing the plaintiff's testimony.

"The court's decision on whether to impose the sanction of excluding . . . testimony . . . is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 233, 963 A.2d 943 (2009).

Although the court properly concluded that a failure to respond in any way to a discovery request cannot reasonably be deemed as compliance, even if no documentation exists, the court was within its province to determine that it would be fair to allow the plaintiff to testify as to the claimed expenses. Accordingly, we conclude that the court did not abuse its discretion in vacating its prior sanction order.

In AC 31500, the judgment is reversed with respect to the order granting the defendant's motion for reimbursement for the loan expense associated with the

Chevrolet Suburban and the case is remanded with direction to deny the defendant's motion; the judgment is reversed with respect to the denial of the plaintiff's motion for an order regarding the division of assets and the case is remanded for further proceedings on that motion in accordance with this opinion; the judgment is affirmed in all other respects. In AC 31562, the judgment is affirmed.

In this opinion the other judges concurred.